## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO:

GLADYS SOTO, individually and as guardian
and mother of ARNALDO RIOS-SOTO,

                  Plaintiffs,

vs.

CITY OF NORTH MIAMI, FLORIDA,
a Municipal Corporation, OFFICER
JONATHAN ALEDDA, in his Individual
Capacity, OFFICER KEVIN WARREN, in his
Individual Capacity, OFFICER ANGEL
REQUEJADO, in his individual capacity,
OFFICER KEVIN CRESPO, in his individual
Capacity and DETECTIVE MICHAEL GAUDIO,
in his individual capacity.

                  Defendants.

_____/

### COMPLAINT

      Plaintiff, GLADYS SOTO, individually and as guardian and mother of ARNALDO E.

RIOS-SOTO, by and through undersigned counsel, hereby sues the CITY OF NORTH MIAMI,

FLORIDA, a municipal Corporation, OFFICER JONATHAN ALEDDA, in his Individual

capacity, OFFICER KEVIN WARREN in his Individual capacity, OFFICER ANGEL

REQUEJADO, in his individual capacity, OFFICER KEVIN CRESPO, in his individual capacity,

and DETECTIVE MICHAEL GAUDIO in his Individual capacity, and alleges as follows:

### PARTIES

      1.     This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331

and 1343 for Plaintiffs' claims arising under Title II of the Americans with Disabilities Act, 42

U.S.C. §§ 12131, et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Fair

Housing Act, 42 U.S.C. 3601, et seq., the Federal Civil Rights Act, 42 U.S.C § 1983, for violations

of the Fourth and Fourteenth Amendments to the United States Constitution; and Florida common

law claims, under 28 U.S.C. § 1367.

2.       At all times material hereto, Plaintiff, GLADYS SOTO ("Ms. Soto" or "Plaintiff"),

is an individual that currently resides in Marion County, Florida, is over eighteen (18) years of age

and is otherwise *sui juris*.

3.       GLADYS SOTO is the mother and guardian of ARNALDO E. SOTO-RIOS, Ms.

Soto currently resides in Marion County, Florida, is *sui juris*, and the appointed guardian for

Arnaldo Rios-Soto.

4.       ARNALDO RIOS-SOTO is a 27 year old Hispanic man who lives with Autism

Spectrum Disorder and an intellectual disability.  He is a person with a disability under all legal

definitions of disability. At all times material, he was living at the Miami Achievement Center for

the Developmentally Disabled (MACtown) Panther group home, located at  1365 NE 128 Street,

North Miami, Florida.  He currently resides at the Carlton Palms Educational Center in Mt. Dora,

Florida.

5.       Defendant CITY OF NORTH MIAMI, FLORIDA ("NORTH MIAMI") is a

Florida municipality organized and existing under the laws of the State of Florida, located in

Miami-Dade County, and operating a police department, and is a person within the meaning of 42

U.S.C. § 1983.  The defendant, NORTH MIAMI, assumes the risk incidental to the maintenance

of a police force and the employment of law enforcement and police officers.

6.       NORTH MIAMI is a public entity pursuant to 42 U.S.C. § 12131, and is subject to

the provisions of Title II of the Americans with Disabilities Act.

7.      NORTH MIAMI is a recipient of federal financial assistance, and is therefore subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

8.      As an ordinary part of its activity as a municipal corporation, Defendant NORTH MIAMI operates and administers, and at all times material hereto, did operate and administer, a police department.

9.      At all times material hereto, the Defendant OFFICER JONATHAN ALEDDA ("ALEDDA"), was a sworn law enforcement officer and/or police officer, employed by Defendant NORTH MIAMI's police department." Upon information and belief, ALEDDA a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise *sui juris*. At all times material hereto, OFFICER JONATHON ALEDDA was an employee and a law enforcement officer of NORTH MIAMI and is being sued in his individual capacity. At all times material hereto OFFICER JONATHAN ALEDDA was acting as an agent and employee of NORTH MIAMI, and was acting under the color of state law.

10.      At all times material hereto, the Defendant OFFICER KEVIN WARREN ("WARREN"), was a sworn law enforcement officer and/or police officer, employed by Defendant NORTH MIAMI's police department." Upon information and belief, WARREN a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise *sui juris.* At all times material hereto, OFFICER KEVIN WARREN was an employee and a law enforcement officer of North Miami and is being sued in his individual capacity. At all times material hereto OFFICER KEVIN WARREN was acting as an agent and employee of NORTH MIAMI, and was acting under the color of state law.

11.      At all times material hereto, the Defendant OFFICER ANGEL REQUEJADO ("REQUEJADO"), was a sworn law enforcement officer and/or police officer, employed by

Defendant NORTH MIAMI's police department." Upon information and belief, REQUEJADO a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise *sui juris*. At all times material hereto, OFFICER REQUEJADO was an employee and a law enforcement officer of North Miami and is being sued in his individual capacity. At all times material hereto OFFICER REQUEJADO was acting as an agent and employee of NORTH MIAMI, and was acting under the color of state law.

12.     At all times material hereto, the Defendant OFFICER KEVIN CRESPO ("CRESPO"), was a sworn law enforcement officer and/or police officer, employed by Defendant NORTH MIAMI's police department." Upon information and belief, CRESPO a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise *sui juris*. At all times material hereto, OFFICER CRESPO was an employee and a law enforcement officer of North Miami and is being sued in his individual capacity. At all times material hereto OFFICER CRESPO was acting as an agent and employee of NORTH MIAMI, and was acting under the color of state law.

13.     At all times material hereto, the Defendant DETECTIVE MICHAEL GAUDIO ("GAUDIO"), was a sworn law enforcement officer and/or police officer, employed by Defendant NORTH MIAMI's police department." Upon information and belief, GAUDIO a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise *sui juris*. At all times material hereto, DETECTIVE GAUDIO was an employee and a law enforcement officer of North Miami and is being sued in his individual capacity. At all times material hereto DETECTIVE GAUDIO was acting as an agent and employee of NORTH MIAMI, and was acting under the color of state law.

14.     At all times relevant herein, the individual Defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of Florida and NORTH MIAMI, in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant NORTH MIAMI, were acting for, and on behalf of, and with the power and authority vested in them by the NORTH MIAMI and City of NORTH MIAMI Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

15.     Venue is placed in the United States District Court for the Southern District of Florida because it is where all the Defendants reside and where the events complained of occurred.

## FACTS

16.     For at least the past twelve years, the Miami Achievement Center for the Developmentally Disabled (MACtown)  operated the Panther group home, located at  1365 NE 128 Street, North Miami, Florida.

17.     At this location in North Miami, MACtown provides a group home for persons who live with developmental and intellectual disabilities, and have intensive behavioral needs.

18.     From at least 2006, North Miami and its police department had actual knowledge that persons with intensive behavioral needs lived at MACtown and in their community.  This knowledge is derived from the following, non-fully inclusive, list of incidents:

   a.   In July 2006, a resident of MACtown eloped from the facilities and was reported by MACtown employees to the NORTH MIAMI police.  The resident who eloped lives with schizophrenia, seizures, depression, and alcohol abuse.  The area was canvased after the report.

b.  In August 2007, there was an attempted burglary at MACtown and the existence of five residents with disabilities as well as the nature of the facility and the medications used at the facility was reported to NORTH MIAMI Police.

c.  Again in August 2007, a resident eloped from MACtown, and was reported to the police as a missing person who came from MACtown and lived with schizophrenia and was "endangered."

d.  In October 2008, a man with an intellectual disability on medications eloped from the MACtown Panther group home and the man (and his disabilities) were reported to NORTH MIAMI Police who issued a missing person's report and the area was canvassed.

e.  In April, 2009, NORTH MIAMI Police arrested a man from the group home who bit his roommate on the lip after an altercation.  The man that the NORTH MIAMI Police arrested and his roommate lived with intellectual disabilities, Autism Spectrum Disorder, and schizophrenia.  After the incident, the NORTH MIAMI police transported the man with an intellectual disability to jail and he was imprisoned overnight.

f.  In February 2010, NORTH MIAMI Police responded to a burglary at MACtown in which a significant amount of controlled anti-psychotics, anti-anxietals, anti-depressants were stolen from the premises.

g.  In June 2012, NORTH MIAMI Police responded to an incident at MACtown and tased a person with an intellectual disability.

h. In September 2010, North Miami Police responded to an incident at MACtown for a resident who eloped from the premises and was advised that the resident was psychotic, verbally aggressive but not violent.

i. In December 2013, the North Miami Police responded to a complaint between roommates at MACtown.

j. In October, 2014, the North Miami Police responded to a complaint between roommates at MACtown.

19. Upon information and belief, the staff and management at MACtown complained to NORTH MIAMI officials, including its police chief, about the treatment of their residents when interacting with the police, but were ignored.

20. Notwithstanding the knowledge of the existence of a group home of persons with disabilities who have intensive behavioral needs, and frequent reports by this group home, NORTH MIAMI failed to train their police officers on interactions with persons with any intellectual and/or developmental disability. As a result of such failure to train, NORTH MIAMI used unnecessary, and potentially deadly, force on persons with disabilities and knowingly imprison persons who lack any semblance of competence to be tried, or deliver persons with no psychiatric conditions to be involuntarily committed to a psychiatric facility.

21. In addition to being Autistic and living with an intellectual disability, MR. RIOS-SOTO has limited speech ability and can only say selected words, he repeats phrases others use (echolalia), and repeats lines from his favorite movies or television shows (scripting). He has continuous residential behavioral therapy to control aggressive behaviors and to assist with everyday life experiences.

22.     When ARNALDO RIOS-SOTO was 24 years old, his mother, GLADYS SOTO was unable to handle his behavioral needs at her home in South Miami-Dade County.  From March 2014 to May 2016, MR. RIOS-SOTO lived in several behavioral-focused group homes that could not adequately meet his intensive behavioral needs with appropriate individualized supervision.

23.     In 2016, MR. RIOS-SOTO's support coordinator, who was contracted with the Florida Agency for Persons with Disabilities, recognized that MR. RIOS-SOTO required a group home where MR. RIOS-SOTO could receive treatment for intensive behavioral challenges, and the only choices were MACtown, or facilities in the Orlando or St. Augustine area.  As such, to remain in the community and be close to his family, MACtown was the only option for MR. RIOS-SOTO in South Florida.

24.     As Ms. SOTO and her daughter visit MR. RIOS-SOTO at least once per week, if not more often, she did not want ARNALDO RIOS-SOTO to be moved out of Miami-Dade County, as such, she was happy to have him go to MACtown for housing and treatment.  MR. RIOS-SOTO moved to MACtown in June of 2016.

25.     At MACtown, MR. RIOS-SOTO was able to have his possessions and had a good relationship with his behavioral analyst, Charles Kinsey.  Mr. Kinsey is African American.  Mr. Kinsey was calm and brought serenity to MR. RIOS-SOTO. He also reminded MR. RIOS-SOTO of a father figure and he would call Mr. Kinsey "daddy" because Mr. Kinsey looked similar to MS. SOTO's ex-boyfriend.

**THE SHOOTING**

26.     On July 18, 2016, Charles Kinsey was providing one-to-one care to MR. RIOS-SOTO. Mr. Kinsey gave MR. RIOS-SOTO his required medication at approximately 4:00 P.M. Thereafter, MR. RIOS-SOTO stood up and began to yell and move about the group home. MR.

RIOS-SOTO, who usually carries a toy with him, then fled the group home with a toy tanker truck, that he named Telefonica Cellular, in his possession.

27.     MR. RIOS-SOTO headed east on NE 128th Street toward NE 14th Avenue. Mr. Kinsey followed MR. RIOS-SOTO, but he was not alarmed, because this was normal behavior for MR. RIOS-SOTO, who had left the group home before, as group homes are not permitted to lock down their residents.

28.     Once MR. RIOS-SOTO got to NE 14th Avenue, he stood in the middle of the street. Mr. Kinsey was trying to convince MR. RIOS-SOTO to return to the group home.

29.     MR. RIOS-SOTO then continued southbound to the intersection of NE 127th Street and NE 14th Avenue at which point MR. RIOS-SOTO sat on the ground in the middle of the street. Mr. Kinsey jogged after him and attempted to convince MR. RIOS-SOTO to get up and return to the group home.

30.     At 5:00 PM, a bystander saw MR. RIOS-SOTO in the middle of the street and called 911 and told the 911 operator that she thought that there was a Spanish man who possessed what appeared to be a gun and he appeared suicidal, and said that she thought "the Spanish guy is a mentally ill person."  She then stated that she wasn't sure if it was a gun.

31.     At 5:01:11, the Miami-Dade Police Dispatcher sent out a call that there was a suicidal person with a gun to his head in the middle of the roadway, and dispatched vehicles to the scene.  Each vehicle responded in "emergency mode" where the lights and sirens are activated.

32.     At that time, Mr. Kinsey began to hear sirens from an emergency vehicle. By 5:02, two officers, OFFICER KEVIN CRESPO and Officer Alens Bernadeau, arrived at the scene, parked and armed themselves with assault rifles.

33.     As Officers Bernadeau and CRESPO approached, they directed Mr. Kinsey to get on the ground. At the time Officers Bernadeau and CRESPO were still several feet away from the final positions where they would stop just before the shooting. In fear that any wrong movement might result in him being shot, Mr. Kinsey kept his hands up in the air and complied with the officers' commands to get on the ground.

34.     When he saw the officers with assault rifles, Kinsey placed his empty hands in the air and began to plead with MR. RIOS-SOTO to cooperate.  MR. RIOS-SOTO did not understand what was happening, and was smiling.

35.     Intermittently, Mr. Kinsey would come to a partial sitting position (as if he were doing an abdominal crunch exercise) to shout information to Officers Bernadeau and CRESPO and to MR. RIOS-SOTO.  Having provided that information he would return to the supine position (on his back) until he rose up again to provide more information to the officers or more instruction to MR. RIOS-SOTO. Mr. Kinsey was screaming to the officers, "What he has is a toy truck in his hands. A toy truck. That's all it is. There's no need for guns." Mr. Kinsey was saying to MR. RIOS-SOTO, "Arnaldo, please be still Arnaldo… Get down Arnaldo.  Lay on your stomach Arnaldo." At one point, Mr Kinsey said to one of the officers, "Can I get up, sir?"

36.     Commander Emile Hollant and Sergeant Milton Reid positioned themselves too far to determine whether the object in MR. RIOS-SOTO hands was a gun.  Notwithstanding the fact that he could not see what MR. RIOS-SOTO was holding, on 5:05:30 PM, Commander Hollant announced over the radio, "He looks like he's loading up his gun." Thirty seconds later, at 5:06, Officer Bernadeau announced over the radio that Mr. Kinsey was indicating that the object was a toy car.  Commander Hollant than realized he needed his binoculars to accurately see the object in MR. RIOS-SOTO's hands, and went to his car to retrieve his binoculars.

37.     Mr. Kinsey told Officers Bernadeau and CRESPO that MR. RIOS SOTO was holding a toy about three to four times.

38.     While officers Bernadeau and CRESPO were approximately 20 feet away from Charles Kinsey and ARNALDO RIOS-SOTO, OFFICER WARREN and ALEDDA were approximately 152 feet away, where they could not see what was in MR. RIOS-SOTO's hands.

39.     OFFICER WARREN noted that MR. RIOS-SOTO was playing with something, but could not see what it was in his hand.

40.     Officer Bernadeau heard Mr. Kinsey's pleas that it was a toy truck and at 5:06, Officer Bernadeau yelled out and advised over the police radio "the person advised that it's a toy – it's the toy, uh, car…so use caution."

41.     At 5:06:55, Officer Bernadeau made visual confirmation and stated on the police radio, "I have a visual. Does not appear to be a firearm. Have units QRX [standby]. Sergeant Reid and OFFICER CRESPO heard the transmission that the object was not a gun.

42.     At this time, ARNALDO RIOS-SOTO was sitting, in the middle of the street, stimming (repetitive behavior) and his body rocking front to back with the truck by his head.

43.     While stimming and rocking may be typical behavior for a  Autistic person, OFFICER CRESPO observed that MR. RIOS-SOTO was waving the object and playing with it with two hands, and noticed, "His behavior seemed a little unusual …as if he had some sort of mental disability."

44.     Sergeant Reid explained that MR. RIOS-SOTO "looked like he was just in his own world, doing his own thing." When asked whether he thought MR. RIOS-SOTO had "mental health issues," Sergeant Reid responded, "I couldn't tell. But he didn't look like he was normal." Sergeant Reid said that MR. RIOS-SOTO's behavior seemed abnormal, because he was

"surrounded by police, ignoring what was going on, it just ...it didn't seem right." According to Sergeant Reid, MR. RIOS-SOTO was playing around with the object, "moving it around ... using both hands."

45.     OFFICER WARREN also described MR. RIOS-SOTO as "playing" with the object. According to OFFICER WARREN, MR. RIOS-SOTO was "sitting there twirling this object" with both hands at times. He described MR. RIOS-SOTO as "twisting" the object and occasionally holding it by what would be the barrel.

46.     Defendant OFFICER ALEDDA expressed uncertainty about whether the object was a gun. Before the shooting, OFFICER ALEDDA asked OFFICER WARREN if he thought MR. RIOS-SOTO was holding a gun. OFFICER WARREN responded that he was not sure.

47.     Eighty-five seconds after officers were cautioned because the object appeared to be a toy, and thirty seconds after visual confirmation on the radio that ARNALDO RIOS-SOTO had a toy, OFFICER ALEDDA balanced his Colt M4 Carbine Semi-Automatic Rifle over the hood of a vehicle, aimed at ARNALDO RIOS-SOTO intending to kill him, and shot three rounds from his rifle at ARNALDO RIOS-SOTO.

48.     At approximately 5:07:25 Commander Hollant advised over the radio "shots fired."

49.     The three shots missed their intended target, ARNALDO RIOS-SOTO, and one bullet hit his therapist and friend, Charles Kinsey.  Mr. Kinsey's blood spattered on MR. RIOS-SOTO. After Mr. Kinsey screamed in pain, MR. RIOS-SOTO stood up and began to yell and making noises, which were described as either "animalistic" or "weird".

50.     After he shot Charles Kinsey, OFFICER ALEDDA made a radio transmission where he stated that MR. RIOS-SOTO was holding a "toy gun", no one was injured, and that MR.

RIOS-SOTO was identified as requiring psychiatric institutionalization under The Florida Mental Health Act, otherwise known as the Baker Act.

**AFTER THE SHOOTING**

51.     Notwithstanding the fact that neither RIOS-SOTO or Kinsey were armed, and KINSEY was shot and injured OFFICER KEVIN CRESPO and Officer Alens Bernadeau made the decision to engage Mr. Kinsey and MR. RIOS-SOTO, and OFFICER CRESPO had ROIS-SOTO at gunpoint, and Bernadeau had Mr. Kinsey at gunpoint and called over OFFICER WARREN to place them in custody while OFFICER CRESPO and Bernadeau kept them at gunpoint.

52.     Soon after the shooting, OFFICER WARREN approached ARNALDO RIOS-SOTO who was then sitting on the ground next to his toy truck and handcuffed him.

53.     Immediately when approaching ARNALDO RIOS-SOTO, it was obvious to OFFICER WARREN than RIOS-SOTO had a "mental health issue," notwithstanding this knowledge and the presence of the toy truck, OFFICER WARREN placed ARNALDO RIOS-SOTO on the ground, handcuffed ARNALDO-RIOS SOTO, frisked and searched his entire body, and arrested him.

54.     At the time of the shooting, it was clear that ARNALDO RIOS-SOTO had a significant developmental and intellectual disability, and there was no probable cause that ARNALDO RIOS-SOTO was guilty of any crime as to handcuff and arrest ARNALDO RIOS-SOTO.

55.     Because his hands were restrained, ARNALDO RIOS-SOTO could not conduct self-soothing behaviors, such as flapping his hands, stimming, or rocking back and forth.

56.     For at least ten minutes, both MR. RIOS-SOTO and MR. Kinsey were left lying on the street in handcuffs, until the Emergency Medical Technician requested the officers take the handcuffs off of Mr. Kinsey.

57.     At this time, OFFICER WARREN placed MR. RIOS-SOTO into his patrol car. While in the patrol car, MR. RIOS-SOTO was heard by a bystander making loud "animalistic sounds and screeching noises" while he was locked in the back seat of the patrol vehicle.

58.     Soon after arriving at the scene, DETECTIVE GAUDIO was advised by Sargent Reid that MR. RIOS-SOTO may have some "mental issues."

59.     While MR. RIOS-SOTO was in OFFICER WARREN's car, DETECTIVE GAUDIO attempted to speak with MR. RIOS-SOTO.  It was "immediately clear" to DETECTIVE GAUDIO that RIOS-SOTO "suffered from some type of mental issue or on some time of narcotic as he was incapable of communicating."

60.     Approximately at 6:00 PM, MR. RIOS-SOTO was transferred in handcuffs by OFFICER REQUEJADO from OFFICER WARREN's patrol car into his police vehicle at the direction of DETECTIVE GAUDIO.  OFFICER REQUEJADO attempted to question  MR. RIOS-SOTO, who, acknowledged that "things that did not make sense" in this interrogation.  After this attempt at questioning,  OFFICER REQUEJADO  believed that  that MR. RIOS-SOTO had a low mental capacity level and "was not all there".

61.     At approximately 5:30 P.M., Clint Bower, President and CEO of MR. RIOS-SOTO's group home, MACtown, went to the scene of the shooting when he found out about Mr. Kinsey and MR. RIOS-SOTO and wanted to take MR. RIOS-SOTO back to the group-home. Notwithstanding his requests, he was not permitted to see anyone for at least thirty minutes.

62.     Finally, Mr. Bower was met by DETECTIVE GAUDIO, and was advised that MR. RIOS-SOTO was in "protective custody" because he was acting "kinda loopy."

63.     Mr. Bower advised DETECTIVE GAUDIO that MR. RIOS-SOTO was not "loopy", but was autistic, had an IQ of 40, and might be aggressive.  Mr. Bower continued that MR. RIOS-SOTO was a resident of MACtown, a group home for persons with developmental disabilities, and that Mr. Kinsey was his employee who cared for MR. RIOS-SOTO.

64.     Mr. Bower continued that he was responsible for MR. RIOS-SOTO's life and his safety is important to him.  DETECTIVE GAUDIO asked why MR. RIOS-SOTO was allowed to leave the facility, and Mr. Bower responded that the purpose of a group home was to be a part of the community, but at all times, the residents would be accompanied by an employee from the group home.

65.     At this time, DETECTIVE GAUDIO began arguing with Mr. Bower whether this was wise, and Mr. Bower stated that the police should have been adequately trained to deal with people with Autism Spectrum Disorder.

66.     Mr. Bower advised DETECTIVE GAUDIO that RIOS-SOTO had a guardian, and that he did not have her number on him at that time, but could obtain it.  He also expressed concern about restraining ARNALDO RIOS-SOTO in handcuffs and as such, he could not do his self-stimulating behavior that he does as an Autistic person.

67.     Notwithstanding Mr Bower's assertion that he was responsible for MR. RIOS-SOTO, and knowledge of the existence of a guardian, DETECTIVE GAUDIO advised Mr. Bower that MR. RIOS-SOTO was going to be transported to the North Miami Police Station so he could try to obtain a statement.  Consent was neither provided nor requested from anyone related to RIOS-SOTO.

68. Mr. Bower was advised that he could pick up MR. RIOS SOTO at the police station at 8:30 PM. Mr. Bower went to the North Miami Police Station to pick him up, and was told to wait and was not told of MR. RIOS-SOTO's whereabouts or the fact that he was being interrogated at the station.

69. Contrary to the requirements of protective custody under the Florida Mental Health Act, otherwise known as the Baker Act, Fla. Stat. § 394.451, et seq., NORTH MIAMI had no intention to deliver MR. RIOS-SOTO to a Baker Act receiving Mental Health Facility.

70. Notwithstanding that DETECTIVE GAUDIO was on the scene with ARNALDO RIOS-SOTO, and knew that MR. RIOS-SOTO was not able to adequately communicate because of his disability, he directed OFFICER REQUEJADO to deliver ARNALDO RIOS-SOTO to the NORTH MIAMI police station to undergo a custodial interrogation at the police station.

71. Despite the fact that both DETECTIVE GAUDIO and OFFICER REQUEJADO had knowledge of the fact that RIOS-SOTO was Autistic, they failed to obtain consent or even provide the minimal protections of § 943.0439, Florida Statutes; DETECTIVE GAUDIO and OFFICER REQUEJADO failed to attempt a good faith effort to ensure that a psychiatrist, psychologist, mental health counselor, special education instructor, clinical social worker, or related professional is present at all interviews of the Autistic individual. According to § 943.0439, the professional must have experience treating, teaching, or assisting patients or clients who have been diagnosed with Autism or an Autism Spectrum Disorder or related developmental disability or must be certified in special education with a concentration focused on persons with autism or an autism spectrum disorder.

72. DETECTIVE GAUDIO and OFFICER REQUEJADO interrogated ARNALDO RIOS-SOTO in Interview Room 2 at the NORTH MIAMI police station.

73.      During this custodial interrogation, RIOS-SOTO remained bound by handcuffs and unable to move.

74.      There was no valid purpose to interrogate ARNALDO RIOS-SOTO, and if such interrogation had a valid purpose and a statement was to be obtained from RIOS-SOTO, Mr. Bower was at all times in the lobby of the North Miami Police Station and could have been used to facilitate a witness statement, in compliance with § 943.0439.

75.      DETECTIVE GAUDIO interrogated MR. RIOS SOTO for approximately three and one half minutes.  During such time, when it was clear that MR. RIOS-SOTO could not adequately respond to questions other than in the affirmative or by echoing the question, DETECTIVE GAUDIO asked the following questions, which were answered in the affirmative:

     a.  Did you want to hurt Charles, did you want to hurt him?

     b.  Did you want to hurt anyone tonight?

     c.  Who did you want to hurt?

76.      ARNALDO RIOS-SOTO looked as if the handcuffs were hurting him, and indicated to DETECTIVE GAUDIO that he wanted the handcuffs removed.  DETECTIVE GAUDIO refused and ordered him to sit.

77.      At all times, ARNALDO RIOS-SOTO obeyed all orders and directions of all of the Officers of NORTH MIAMI and did not resist the officers.

78.      The sole purpose of DETECTIVE GAUDIO and OFFICER REQUEJADO was to interrogate a person who was knowingly legally mentally incompetent, Autistic, and intellectually disabled, and to intimidate and coerce RIOS-SOTO to admit unlawful or threatening behavior.

79.     After attempting to unlawfully interrogate RIOS-SOTO, it was clear to DETECTIVE GAUDIO and OFFICER REQUEJADO that MR. RIOS-SOTO could not provide them the statement that they desired.

80.     After 8:30 P.M., OFFICER REQUEJADO and Sergeant Reyes drove ARNALDO RIOS-SOTO to MACtown and uncuffed him.

81.     That night, MR. RIOS SOTO began to attack the staff, other residents, and had major behavioral problems.  Soon thereafter, he escaped from the group home to the scene of the shooting.  He beat the ground where the incident occurred with his fists and shouted "Police Shoot", "Police Shoot."

82.     As ARNALDO RIOS SOTO was inconsolable and could not be controlled, MACtown institutionalized ARNALDO RIOS-SOTO in Aventura Hospital Psychiatric Ward for evaluation.

83.     Because of the trauma of the events of July 18, 2016, and the fact that his condition regressed and his behavior became more uncontrolled and, at times violent, a group home with a more intensive behavioral program was needed.

84.     Because of the unavailability of intensive behavioral group homes in South Florida, MR. RIOS-SOTO was institutionalized in Aventura Hospital for 34 days.

85.     At this time, ARNALDO RIOS-SOTO would repeat the sounds of a gun, is terrified of any person wearing a uniform, and terrified that such person was going to harm his mother, GLADYS SOTO.  His behavior regressed to the point that he was violent to the staff of the psychiatric hospital and injured several members of the staff.

86.     Due to his new and difficult behavioral issues as a result of the shooting, The Florida Agency for Persons with Disabilities did a behavioral assessment of MR. RIOS-SOTO and

derived a comprehensive behavioral plan.  The only facility that could meet MR. RIOS-SOTO's

needs was an institutionalized placement in Central Florida.

87.     As a result of Defendants' actions, ARNALDO RIOS-SOTO is suffering, and will

continue to suffer extreme emotional distress, and will need the highest degree of intensive

behavioral services to become integrated in the community again, and to attain the same level and

trajectory of behavioral needs prior to the shooting.

88.     As GLADYS SOTO cares for her son, she was forced to move to Ocala, Florida to

be near her son so she could continue to see him.

89.     All conditions precedent to the filing of this action, including those impose by

Florida Statutes § 768.28, have been satisfied or waived.

90.     Disability Independence Group, Inc. has been retained to represent Ms. SOTO and

MR. RIOS-SOTO, and she has agreed to pay counsel a reasonable fee for their services herein.

## COUNT I
## BATTERY AGAINST INDIVIDUAL OFFICERS

91.     Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO,

realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

92.     At all times material, all defendants knew that ARNALDO RIOS-SOTO had a

mental disability and was playing with a toy truck in the middle of the street.

93.     On or about July 18, 2016, several officers had or caused physical contact with

RIOS-SOTO without his or his guardians consent including, but not limited to the following:

a.  OFFICER JONATHAN ALEDDA fired his weapon at MR. RIOS-SOTO and as a

result of the shooting, blood from his friend and caretaker, Charles Kinsey sprayed

and splattered on RIOS-SOTO.

b. OFFICER KEVIN WARREN arrested, frisked, searched, and handcuffed MR. RIOS-SOTO and placed MR. RIOS-SOTO in his police vehicle.

c. OFFICER ANGEL REQUEJADO removed MR. RIOS-SOTO from OFFICER WARREN's vehicle and physically forced him to go into his police vehicle.

d. OFFICER ANGEL REQUEJADO also led MR. RIOS SOTO from his vehicle into the NORTH MIAMI Police Department and into the interrogation room, then from the interrogation room to his vehicle and back to his group home.

e. OFFICER KEVIN CRESPO engaged MR. RIOS-SOTO at gunpoint and physically assisted in the arrest of MR. RIOS-SOTO.

f. DETECTIVE MICHAEL GAUDIO ordered the actions of OFFICER REQUEJADO as well as had physical contact with MR. RIOS-SOTO while MR. RIOS-SOTO was in OFFICER WARREN's vehicle.

g. Both DETECTIVE GAUDIO and OFFICER REQUEJADO had physical contact with MR. RIOS-SOTO during his compulsory interrogation at the North Miami Police Department Headquarters.

94. All of the individual defendants' physical contact with MR. RIOS-SOTO were harmful and offensive to MR. RIOS-SOTO.

95. All of the individual defendants acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of MR. RIOS-SOTO's rights or safety.

96. As a direct and proximate cause of the individual defendants' intentional attack, RIOS-SOTO has suffered damages, physical injury, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

**WHEREFORE**, Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against OFFICER JONATHAN ALEDDA, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO, an award of compensatory damages, punitive damages, prejudgment interest and any further relief this Court deems equitable and just and proper.

## COUNT II
## ASSAULT

97.     Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

98.     At all times material, all defendants knew that ARNALDO RIOS-SOTO had a mental disability and was playing with a toy truck in the middle of the street.

99.     On or about July 18, 2016, several officers committed assault on RIOS-SOTO, each being an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent:

    a.   OFFICER JONATHAN ALEDDA fired his weapon at MR. RIOS-SOTO and as a result of the shooting, struck Charles Kinsey and ARNALDO RIOS-SOTO stood up in fear and concern.

    b.   OFFICER KEVIN WARREN arrested, frisked, searched, and handcuffed MR. RIOS-SOTO and placed MR. RIOS-SOTO in his police vehicle.

    c.   OFFICER ANGEL REQUEJADO removed MR. RIOS-SOTO, while being restrained, from OFFICER WARREN's vehicle and physically forced him to go into his police vehicle.

> d. OFFICER ANGEL REQUEJADO also led MR. RIOS SOTO, while being restrained, from his vehicle into the NORTH MIAMI Police Department and into the interrogation room, then from the interrogation room to his vehicle and back to his group home.
>
> e. OFFICER KEVIN CRESPO engaged MR. RIOS-SOTO at gunpoint and physically assisted in the arrest of MR. RIOS-SOTO.
>
> f. DETECTIVE MICHAEL GAUDIO ordered the actions of OFFICER REQUEJADO as well as had physical contact with MR. RIOS-SOTO while MR. RIOS-SOTO was in OFFICER WARREN's vehicle.
>
> g. Both DETECTIVE GAUDIO and OFFICER REQUEJADO had threatened and coerced MR. RIOS-SOTO during his compulsory interrogation at the NORTH MIAMI Police Department Headquarters.

100. By virtue of MR. RIOS-SOTO's disability, unwelcome physical contact creates apprehension of imminent physical or bodily harm. Each of these officers intended to and created physical contact and the apprehension of unwelcome physical contact and bodily harm with RIOS-SOTO.

101. Further, being the victim of an attempted shooting as well as being held at gunpoint would create an apprehension of imminent physical or bodily harm to any person, with or without a disability.

102. The individual officers acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of MR. RIOS-SOTO's rights or safety.

103.    As a direct and proximate cause of the individual officers' intentional assaults, RIOS-SOTO has suffered damages, physical injury, pain and suffering, mental anguish, emotional distress and loss of capacity for the enjoyment of life.

**WHEREFORE,** Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against OFFICER JONATHAN ALEDDA, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO, an award of compensatory damages, punitive damages, prejudgment interest and any further relief this Court deems equitable, just and proper.

### COUNT III
### FALSE ARREST and IMPRISONMENT

104.    Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

105.    On or about July 18, 2016, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO intentionally restrained ARNALDO RIOS-SOTO without provocation.

106.    OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO actions of intentionally restraining ARNALDO RIOS-SOTO were unreasonable, unwarranted, without probable cause and without legal authority.

107.    Due to the individual officers' actions, MR. RIOS-SOTO was placed in handcuffs and falsely imprisoned in a patrol car for over two hours, and held at the North Miami Police Station for interrogation.  Such actions were unreasonable, unwarranted, without probable cause and without legal authority.

108.    The Individual Officers acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of MR. RIOS-SOTO's rights, safety, or property.

109.    As a direct and proximate cause of the individual officers' falsely imprisoning RIOS-SOTO, he has suffered damages, physical injury, pain and suffering, mental anguish, emotional distress and loss of capacity for the enjoyment of life.

**WHEREFORE**, Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against OFFICER JONATHAN ALEDDA, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO, an award of compensatory damages, punitive damages, prejudgment interest and any further relief this Court deems equitable, just and proper.

### COUNT IV
### CIVIL CONSPIRACY TO ENGAGE IN FALSE ARREST AND FALSE IMPRISONMENT

110.    Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

111.    On or about July 18, 2016, DETECTIVE MICHAEL GAUDIO, along with OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO and other officers, including but not limited Officers Bernadeau and Major Milton Reid, and met together at the scene of the shooting and at the North Miami Police Station to manipulate the investigation and its results to implicate ARNALDO RIOS-SOTO in the cause of the shooting of Charles Kinsey.

112.    In furtherance of the conspiracy, both ARNALDO RIOS-SOTO and Charles Kinsey were falsely arrested, RIOS-SOTO was falsely imprisoned, unlawfully interrogated, and subject to egregious violations of his protected civil rights as a person with a disability.

113.   In furtherance of the conspiracy, DETECTIVE MICHAEL GAUDIO and OFFICER ANGEL REQUEJADO attempted to interrogate an Autistic Man with an intellectual disability to derive admissions to clear OFFICER ALEDDA.

114.   DETECTIVE MICHAEL GAUDIO, along with OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, and OFFICER KEVIN CRESPO acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of MR. RIOS-SOTO's rights, safety, or property.

115.   As a direct and proximate cause of the conspiracy to deny his rights and implicate ARNALDO RIOS-SOTO at fault for the shooting of his caretaker, he has suffered damages, physical injury, pain and suffering, mental anguish, emotional distress and loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO, an award of compensatory damages, punitive damages, prejudgment interest and any further relief this Court deems equitable, just and proper.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

116.   Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

117.   On or about July 18, 2017, OFFICER JONATHAN ALEDDA intentionally attempted to shoot and kill ARNALDO RIOS-SOTO, shot his friend and caretaker, Charles Kinsey, and deliberately inflicted emotional distress on RIOS-SOTO without provocation.

118.     Within two minutes, OFFICER KEVIN CRESPO rushed at ARNALDO RIOS-SOTO and held him at gunpoint while OFFICER KEVIN WARREN handcuffed, frisked and searched MR. RIOS-SOTO.

119.     For the next three hours, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, and DETECTIVE MICHAEL GAUDIO restrained ARNALDO RIOS-SOTO's hands so he could not move or perform stimming behaviors to sooth his anxiety and disability-related behaviors.

120.     OFFICER ANGEL REQUEJADO, and DETECTIVE MICHAEL GAUDIO communicated with ARNALDO RIOS-SOTO in a compulsory interrogation without consent, with knowledge of his disability, solely in an attempt to intimidate and coerce him.

121.     The conduct of OFFICER JONATHAN ALEDDA, KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO was outrageous and extreme in degree.

122.     As a direct and proximate cause of this intentional infliction of emotional distress, ARNALDO RIOS has suffered damages, severe emotional distress, physical injury, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

**WHEREFORE**, Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against OFFICER JONATHAN ALEDDA, KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO, an award of compensatory damages, punitive damages, prejudgment interest and any further relief this Court deems equitable, just and proper.

## COUNT VI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

123.    Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

124.    On or about July 18, 2017, OFFICER JONATHAN ALEDDA intentionally attempted to shoot and kill ARNALDO RIOS-SOTO, shot his friend and caretaker, Charles Kinsey, and during such time, suffered a physical impact by virtue of Mr. Kinsey's blood spraying on him.

125.    Within two minutes, OFFICER KEVIN CRESPO rushed at ARNALDO RIOS-SOTO and held him at gunpoint while OFFICER KEVIN WARREN handcuffed, frisked and searched MR. RIOS-SOTO.

126.    For the next three hours, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, and DETECTIVE MICHAEL GAUDIO restrained ARNALDO RIOS' hands so he could not move or perform stimming behaviors to sooth his anxiety and disability-related behaviors.

127.    OFFICER ANGEL REQUEJADO, and DETECTIVE MICHAEL GAUDIO communicated with ARNALDO RIOS-SOTO in a compulsory interrogation without consent, with knowledge of his disability, solely in an attempt to intimidate and coerce him.

128.    ARNALDO RIOS-SOTO had a close personal relationship with Charles Kinsey.

129.    The conduct of OFFICER JONATHAN ALEDDA, KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO was outrageous and extreme in degree, and were additionally the product of extreme negligence.

130.     As a direct and proximate cause of this negligent infliction of emotional distress, ARNALDO RIOS-SOTO has suffered damages, severe emotional distress, physical injury, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

**WHEREFORE**, Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against OFFICER JONATHAN ALEDDA, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO, an award of compensatory damages, punitive damages, prejudgment interest and any further relief this Court deems equitable and just and proper.

## COUNT VII
## 42 U.S.C. § 1983 CIVIL RIGHTS VIOLATION CLAIM
## UNLAWFUL IMPRISONMENT AND ARREST

131.     Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

132.     At all times material hereto, ARNALDO RIOS-SOTO maintained the right to be free from unlawful imprisonment and arrest, a protected right under the Fourth and Fourteenth Amendments of the United States Constitution.

133.     At all times material hereto, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO were acting under the color of state law as law enforcement officers employed by the City of NORTH MIAMI.

134.     On or about July 18, 2016, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO, while acting under the color of state law, unlawfully imprisoned and arrested MR. RIOS-SOTO.

135.    The imprisonment and arrest of RIOS-SOTO was unlawful because there was no arrest warrant nor was there arguable probable cause for arrest, nor was RIOS-SOTO transferred to a receiving facility pursuant to Fla. Stat. § 394.451.

136.    Due to ARNALDO RIOS-SOTO's unlawful imprisonment and arrest, he was deprived of his constitutionally protected right to be free from unlawful imprisonment and arrest.

137.    As a direct and proximate cause of ARNALDO RIOS-SOTO's unlawful imprisonment and arrest, his constitutionally protected civil rights were violated and he suffered damages, physical injury, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

**WHEREFORE**, Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against OFFICER JONATHAN ALEDDA, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO,   an award of compensatory damages, punitive damages, reasonable attorney's fees and costs as provided by 42 U.S.C. § 1988, prejudgment interest and any further relief this Court deems equitable and just.

### COUNT VIII
### 42 U.S.C. § 1983 CIVIL RIGHTS VIOLATION
### LIBERTY OF BODILY MOVEMENT

138.    Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

139.    At all times material hereto, RIOS-SOTO maintained the right to be free from bodily restraint, which has always been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action. *Youngberg v. Romeo*, 457 U.S. 307 (1982).

140.     This is a statutory cause of action based upon 42 U.S.C. § 1983 alleging violations of ARNALDO RIOS-SOTO's rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizure; and his rights under the Fourteenth Amendment to equal protection and due process solely on the basis of disability.

141.     OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO, while acting under the color of state law, intentionally and maliciously handcuffed and otherwise restricted ARNALDO RIOS-SOTO liberty of bodily movement, notwithstanding the fact that there was no right or privilege to hold MR. RIOS-SOTO without probable cause or consent.

142.     OFFICER ANGEL REQUEJADO, and DETECTIVE MICHAEL GAUDIO, while acting under the color of state law, intentionally and maliciously  handcuffed and restrained ARNALDO RIOS-SOTO liberty of bodily movement while interrogating him without consent or privilege to do so.

143.     Due to the actions of OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO, RIOS-SOTO was deprived of his Fourth and Fourteenth Amendment constitutionally protected right to be free from free from bodily restraint.

144.     As a direct and proximate cause of OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO's denial of RIOS-SOTO's constitutionally protected civil rights, he suffered damages, physical injury, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

**WHEREFORE** Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against OFFICER JONATHAN ALEDDA, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO, an award of compensatory damages, punitive damages, reasonable attorney's fees and costs as provided by 42 U.S.C. § 1988, prejudgment interest and any further relief this Court deems equitable and just.

### COUNT IX
### 42 U.S.C. § 1983 CIVIL RIGHTS VIOLATION CLAIM
### MONELL CLAIMS – FAILURE TO TRAIN

145.    Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

146.    The injuries inflicted upon ARNALDO RIOS-SOTO by the employees of the NORTH MIAMI Police Department were the result of the City of NORTH MIAMI's failures to adopt adequate policies and to adequately train its police officers with regard to the handling of incidents involving persons with disabilities.

147.    From the ten incidents at MACtown alone, the CITY OF NORTH MIAMI had notice of the need to train regarding the needs of its own citizens with developmental disabilities, including the unlawful acts of using a Taser on a resident or unlawfully imprisoning a resident of MACtown who has a developmental disability.

148.    Any reasonable municipality cognizant of its duties and obligations to the citizens it serves would be aware of the need for training on use of force generally, and specifically as it pertains to citizens with disabilities.

149.    The failures of the CITY OF NORTH MIAMI adequately to train its police officers demonstrate that the CITY OF NORTH MIAMI was deliberately indifferent to the constitutional

rights of persons with Autism Spectrum Disorder or other intellectual or developmental disabilities, including MR. RIOS-SOTO.

150.    In failing to adequately train its officers, the CITY OF NORTH MIAMI violated the Fourth and Fourteenth Amendments to the United States Constitution as implemented by 42 U.S.C. § 1983.

151.    As a direct and proximate cause of the CITY OF NORTH MIAMI's failure to adequately train its officers.  ARNALDO RIOS-SOTO's constitutionally protected civil rights were violated and he suffered damages, physical injury, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

**WHEREFORE** Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against the CITY OF NORTH MIAMI  an award of compensatory damages,  reasonable attorney's fees and costs as provided by 42 U.S.C. § 1988, prejudgment interest and any further relief this Court deems equitable and just.

## COUNT X
## TITLE II OF THE AMERICANS WITH DISABILITIES ACT VIOLATION

152.    Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

153.    RIOS-SOTO is a qualified individual with a disability within the meaning of the Americans with Disabilities Act.

154.    The CITY OF NORTH MIAMI is a public entity as defined in the Americans with Disabilities Act, 42 U.S.C. § 12131(1).

155.    The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

156.     The CITY OF NORTH MIAMI violated the ADA, 42 U.S.C. § 12132, by treating MR. RIOS-SOTO in a discriminatory fashion because of his known and obvious disability by its actions, including but not limited to the following:

a.  The CITY OF NORTH MIAMI assumed that, solely because of his disability, ARNALDO RIOS-SOTO was a danger to himself and others when he was on the street with a toy.

b.  The CITY OF NORTH MIAMI arrested and imprisoned ARNALDO RIOS-SOTO solely because he had a disability, when any other non-disabled witness to a shooting would have been allowed to choose whether to provide a statement and leave.

c.  The CITY OF NORTH MIAMI subjected ARNALDO RIOS-SOTO to a compelled interrogation and failed to offer or provide any assistance as mandated by Florida law due to his disability, and failed to provide or adopt training pursuant to § 943.0439, Florida Statutes.

d.  The CITY OF NORTH MIAMI failed to provide its officers and employees training on interacting with persons with Autism, developmental disabilities or intellectual disabilities.

157.     Based solely on and attempting to take advantage of MR. RIOS-SOTO's disability, DETECTIVE MICHAEL GAUDIO conducted an improper and illegal interrogation of MR. RIOS-SOTO in an attempt to clear OFFICER ALEDDA of any charges.

158.    As a result of actions of the CITY OF NORTH MIAMI, and its officers and agents, RIOS-SOTO has been injured and suffered emotional distress, pain, and anguish.

159.    THE CITY OF NORTH MIAMI's actions were intentional and with reckless disregard and deliberate indifference for RIOS-SOTO's rights as a person with a disability.

**WHEREFORE** Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against the CITY OF NORTH MIAMI  an award of compensatory damages,  reasonable attorney's fees and costs as provided by 42 U.S.C. § 12205, prejudgment interest and any further relief this Court deems equitable and just.

## COUNT XI
## SECTION 504 OF THE REHABILITATION ACT VIOLATION

160.    Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

161.    RIOS-SOTO is a qualified individual with a disability within the meaning of the Section 504 of the Rehabilitation Act of 1973.

162.    The CITY OF NORTH MIAMI is a recipient of federal financial assistance.

163.    The Department of Justice's regulation implementing Section 504, for its own programs and activities, which includes The CITY OF NORTH MIAMI, is codified at 28 C.F.R. pt. 39.

164.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to otherwise be discriminated against by a public entity.

165.   The CITY OF NORTH MIAMI violated the Section 504 of the Rehabilitation Act by treating ARNALDO RIOS-SOTO in a discriminatory fashion because of his known and obvious disability by the following:

a.   The CITY OF NORTH MIAMI assumed that, because of his disability, ARNALDO RIOS-SOTO was a danger to himself and others when he was on the street with a toy.

b.   The CITY OF NORTH MIAMI arrested and imprisoned ARNALDO RIOS-SOTO solely because he had a disability, when any other non-disabled witness to a shooting would have been allowed to choose to provide a statement and leave.

c.   The CITY OF NORTH MIAMI subjected ARNALDO RIOS-SOTO to a compelled interrogation and failed to offer or provide any assistance as mandated by Florida law due to his disability, and failed to provide or adopt training pursuant to § 943.0439, Florida Statutes.

d.   The CITY OF NORTH MIAMI failed to provide its officers and employees training on interacting with persons with Autism, developmental disabilities or intellectual disabilities.

166.   DETECTIVE MICHAEL GAUDIO singled RIOS-SOTO out because of his disability, as a method to attempt to garner information relating to OFFICER ALEDDA to attempt to clear him of any charges.

167.   As a result of actions of the CITY OF NORTH MIAMI, and its officers and agents, RIOS-SOTO has been injured and suffered emotional distress, pain, and anguish.

168.    The CITY OF NORTH MIAMI's actions were intentional and with reckless disregard and deliberate indifference for RIOS-SOTO's rights as a person with a disability.

**WHEREFORE** Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against the CITY OF NORTH MIAMI  an award of compensatory damages,  reasonable attorney's fees and costs, prejudgment interest and any further relief this Court deems equitable and just.

## COUNT XII
## FAIR HOUSING ACT VIOLATION

169.    Plaintiff, GLADYS SOTO, individually and as guardian and mother of ARNALDO RIOS-SOTO, realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

170.    The Fair Housing Act prohibits discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of, *inter alia*, race and disability. 42 U.S.C. § 3604(b) and (f)

171.    When a governmental defendant provides housing-related municipal services, it must do so in a manner that does not discriminate based on race, color, national origin, or disability.

172.     By failing to implement policies and train its officers relating to the needs of persons with disabilities, the CITY OF NORTH MIAMI has discriminated in the provision of municipal utility services that are essential to the use and enjoyment of housing—such as police services—based upon disability, in violation of § 3604(f).

173.    Further ARNALDO RIOS-SOTO was additionally targeted as he was Hispanic Man with a mental disability who was accompanied by a Black Man who was wearing street clothes.

174.    Had MR. RIOS-SOTO have been accompanied by a therapist who was a White Woman, wearing a traditional nurse's uniform of a dress, apron and cap,  MR. RIOS-SOTO would not have been stereotypically identified as a threat (even after it was confirmed that MR. RIOS-SOTO was carrying a toy truck), and his therapist would not have been shot.

175.    The actions by all Defendants by creating a crime scene, cordoning off the parameter, and ultimately placing ARNALDO RIOS-SOTO and Charles Kinsey in danger of their lives was due to invidious racial, national origin, and disability discrimination.

176.    The actions by all Defendants in falsely arresting, imprisoning, and interrogating RIOS-SOTO in violation of his human and civil rights makes it impossible for RIOS-SOTO to continue to live in North Miami, and  creates a dangerous environment for any resident of North Miami that lives with a developmental or intellectual disability.

177.    Such lack of training and danger faced by persons with developmental or intellectual disabilities is further exemplified by DETECTIVE MICHAEL GAUDIO's assertion that it was not wise for persons who were residents of MACtown to be allowed to leave the group home facility.

178.    Due to their individual actions in discriminating on the basis of disability, race, and national origin in the provision of police services, each officer who was substantially involved in failing to provide such services to MR. RIOS-SOTO is responsible for the violation to his protected housing rights.

179.    OFFICER JONATHAN ALEDDA, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO were all substantially involved in the discrimination in MR. RIOS-SOTO's housing related services.

180.    By the failure to render its services in a non-discriminatory fashion, the CITY OF NORTH MIAMI has made housing unavailable to RIOS-SOTO, and as it was the only group home that provided the degree of intensive behavioral services needed by MR. RIOS-SOTO, MR. RIOS-SOTO was forced to move out of South Florida to receive adequate housing and treatment.

181.    GLADYS SOTO, through her association with ARNALDO RIOS-SOTO is an aggrieved party who was injured as a result of the defendants conduct, and was similarly forced to move from her long-time home in South Florida so she could care for and be near to her son.

182.    As a direct and proximate cause of OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, DETECTIVE MICHAEL GAUDIO's denial of RIOS-SOTO's housing related services because of his disability, ARNALDO RIOS SOTO and GLADYS SOTO suffered damages, pain and suffering, mental anguish, emotional distress, and loss of equal housing opportunities.

183.    The CITY OF NORTH MIAMI is responsible for the acts and omissions of their employees, agents and police officers, and as such is liable for any damages suffered by GLADYS SOTO and ARNALDO RIOS-SOTO as a result of housing discrimination.

**WHEREFORE** Plaintiff, GLADYS SOTO, individually, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against the CITY OF NORTH MIAMI, OFFICER JONATHAN ALEDDA, KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO,  an award of compensatory damages, punitive damages, reasonable attorney's fees and cost, prejudgment interest and any further relief this Court deems equitable and just.

## COUNT XIII
## CIVIL RIGHTS ACT OF 1866 - 42 U.S.C. 1982

184.     Plaintiff, GLADYS SOTO, individually and as guardian and mother of ARNALDO RIOS-SOTO, realleges paragraphs 1 through 90 and incorporates said paragraphs as if fully set forth herein.

185.     The Civil Rights Act of 1866, provides that "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

186.     ARNALDO RIOS-SOTO was targeted as he was Hispanic Man with a mental disability who was accompanied by a Black Man who was wearing street clothes.

187.     Had MR. RIOS-SOTO have been accompanied by a therapist who was a White Woman, wearing a traditional nurse's uniform of a dress, apron and cap,  MR. RIOS-SOTO would not stereotypically identified as a threat (even after it was confirmed that MR. RIOS-SOTO was carrying a toy truck), and Mr. Kinsey would not have been shot.

188.     The actions by all Defendants by creating a crime scene, cordoning off the parameter, and ultimately placing ARNALDO RIOS-SOTO and Charles Kinsey in danger of their lives was due to invidious racial discrimination.

189.     As a result of the Defendants' actions, ARNALDO RIOS-SOTO was unable to continue to live at MACtown and was forced to find alternate housing adequate for his needs in Central Florida.

190.     The actions by the Defendants' in discriminating against RIOS-SOTO, are violations of his right to have the same rights as enjoyed by other citizens to lease and hold and real and personal property because of race in violation of 42 U.S.C § 1982.

*Disability Independence Group, Inc. * 2990 Southwest 35th Avenue * Miami, FL 33133*

191.    As a direct and proximate cause of OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, DETECTIVE MICHAEL GAUDIO, and the CITY OF NORTH MIAMI discrimination based upon his and Mr. Kinsey's race, ARNALDO RIOS SOTO suffered damages, pain and suffering, mental anguish, emotional distress, and loss of equal housing opportunities.

**WHEREFORE** Plaintiff, GLADYS SOTO, as guardian and mother of ARNALDO RIOS-SOTO, demands judgment against the CITY OF NORTH MIAMI, OFFICER JONATHAN ALEDDA, OFFICER KEVIN WARREN, OFFICER ANGEL REQUEJADO, OFFICER KEVIN CRESPO, and DETECTIVE MICHAEL GAUDIO,  an award of compensatory damages, punitive damages, reasonable attorney's fees and cost, prejudgment interest and any further relief this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Demand is hereby made for trial by jury on all issues so triable.

**DATED**: June 5, 2017.


DISABILITY INDEPENDENCE GROUP, INC
2990 SW 35th Avenue,
Miami, Florida 33133
Telephone:     (305) 669-2822
Facsimile:     (305) 442-4181
E-mail: Mdietz@justdigit.org


By:     ____*s/ Matthew W. Dietz*_____
MATTHEW W. DIETZ
Florida Bar No.: 84905


*Disability Independence Group, Inc. * 2990 Southwest 35th Avenue * Miami, FL 33133*